UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD J. SWANSON,

    Plaintiff,

v.                                      Case No. 1:16-cv-1318
                                          Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff alleged a disability onset date of December 14, 2013. PageID.301. He identified his disabling conditions: breathing conditions/severe shortness of breath; dizziness; sudden collapse; back problems (compressed discs, bulging and herniated discs in lower back); conditions in both knees; condition in right hip; and loss of grip strength in the hands. PageID.305. Prior to applying for DIB and SSI, plaintiff completed the 12th Grade and had paramedic training, with past employment as a paramedic and a freeway service patrol tech. PageID.306. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 14, 2015. PageID.34-44. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

3

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 14, 2013, and met the insured status requirements of the Social Security Act through December 31, 2018. PageID.36. At the second step, the ALJ found that plaintiff had severe impairments of: chronic obstructive pulmonary disease (COPD); essential hypertension; moderate bilateral foraminal stenosis at C5-C6; mild focal superior end plate depression of L2; and minimal disc narrowing of L4-L5 with minimal endplate change. PageID.36. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.36-37.

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can lift and carry 20-50 pounds occasionally, 10-25 pounds frequently, and up to 10 pounds constantly. He can push and pull as much as he can lift and carry. He can sit, stand and walk up to 6 hours, each, in an eight-hour workday. He cannot use foot or hand controls. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can frequently balance and stoop, occasionally crouch and kneel, but never crawl. He can frequently reach overhead and frequently handle. He must avoid exposure to extreme cold, extreme heat, and extreme humidity. He cannot work in an environment with poor ventilation and he must avoid exposure to excessive pulmonary irritants, such as fumes and smoke. He cannot work at a production rate pace, such as on an assembly line or conveyor belt and he cannot drive a motor vehicle.

PageID.37. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.42.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the medium exertional level in the national economy. PageID.42-43.

4

Specifically, the ALJ found that plaintiff could perform the requirements of medium and unskilled occupations such as counter supply worker (9,000 jobs in Michigan, 170,000 jobs nationally), laundry worker (2,000 jobs in Michigan, 105,000 jobs nationally), and hand packer (6,000 jobs in Michigan, 300,000 jobs nationally). PageID.43. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 14, 2013 (the alleged onset date) through September 14, 2015 (the date of the decision). PageID.43-44.

### III. DISCUSSION

Plaintiff set forth three issues on appeal:

**A. The ALJ erred in failing to properly evaluate plaintiff's severe impairment of monoclonal gammopathy of undetermined significance (MGUS).**

Plaintiff contends that the ALJ failed to recognize MGUS as a severe impairment. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id*. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Here, ALJ Jones found that plaintiff had a severe impairment of an affective disorder (AR

5

7). The ALJ's failure to include other severe impairments at step two is legally irrelevant. Accordingly, plaintiff's claim of error should be denied.

> **B. The ALJ gave partial weight to the opinion of the treating specialist, Alex Janusz, D.O.**
>
> **C. The ALJ erred in not considering the effect of plaintiff's use of a cane or wheelchair on his ability to work.**

Plaintiff contends that the ALJ improperly assigned partial weight to the opinions of his neurologist, Dr. Janusz. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques;

6

and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed Dr. Janusz' opinion as follows:

> The claimant's treating neurologist, Alex Janusz, D.O., completed an examination in July of 2015 (Ex. 13F/6). He noted that the claimant's attorney had requested completion of disability forms, which were dependent on the subjective responses of the claimant (Ex. 13F/6). Dr. Janusz noted that testing had been inconclusive, and "did not reflect the perception of profound weakness" alleged by the claimant (Ex. 13F/6). It was further noted that the claimant initially refused referral to a tertiary care center, despite the severity of his allegations, and had changed neuromuscular disorder clinic providers prior to completing workup at the University of Michigan (Ex. 13F/6). Dr. Janusz observed inconsistencies in the claimant's presentation and functional ability, notably that he presented as much weaker on manual muscle testing than demonstrated by his ability to stand and the distance he was able to travel while using two canes to ambulate (Ex. 13F/6). Dr. Janusz noted no shortness of breath during examination, with no dysarthria or saliva pooling, and ability to hear the tuning fork with either ear (Ex. 13F/7). Rapid repetitive motions were preserved, with extra muscle tone noted on the lower extremities (Ex. 13F/7).
>
> As for the opinion evidence, treating neurologist Dr. Janusz completed a medical source statement in July of 2015, where he noted that the claimant's diagnosis was "unknown" (Ex. 13F/3). He stated that the claimant's care had been transferred to the University of Michigan in February of 2015, after the claimant had failed physical therapy efforts (Ex. 13F/3). It was noted that subjectively, the claimant could lift/carry no weight, and that he could stand/walk for one hour per day, and sit for eight hours in one day (Ex. 13F/4). He opined the need for frequent breaks of 15 minutes, and that the claimant could engage in fine and gross manipulation for two hours each day (Ex. 13F/4). Dr. Janusz further indicated that the claimant could occasionally twist, and could never stoop, crouch, or climb (Ex. I3F/5). In his narrative, Dr. Janusz pointed out that although some of the claimant's examination features showed limited muscle energy, he was able to walk, and there were no clear findings on diagnostic testing (Ex. 13F/5). The opinions of Dr. Janusz, provided by a treating specialist, are given partial weight. The physical limitations provided by Dr. Janusz were based entirely on the claimant's subjective

7

complaints, according to both the statements of Dr. Janusz and the testimony of the claimant. The assessments and observations of Dr. Janusz as a treating specialist, however, are given more weight. He notes the inconsistencies in the claimant's demonstrated abilities and clinical testing, and the disproportionality of his allegations to the objective findings.

PageID.40-41.

Dr. Janusz raised a number of concerns about plaintiff's condition in a letter dated July 8, 2015 (sent after the examination but before he completed the medical assessment):

> The patient is intensely interested in having forms filed for Social Security under the guidance of an attorney acting as coach. He also is filing for additional home care from Michigan Department of Health and Human Services. These forms do require an extensive interview. However, much of this information is subjective and goes back to the patient's own recollection of what they can or cannot do. An example is how often can a patient look down and have sustained flexion of the neck. Or another question would be the ability to move or carry items. At this point, the patient is barely ambulatory and at one point asked for an electric wheelchair even though he has no van to transport the wheelchair and does not live in ADA housing that he can even go through doorways using an electric wheelchair.

PageID.781. The doctor noted that, "The testing that I performed here was inconclusive and certainly did not reflect the perception of profound weakness." *Id*.

The doctor also pointed out "unusual points in this case regarding the patient's interactions." *Id*.

> First, when I suggested that he needed to go to a tertiary care center given the complexity of his case, he initially did not want to go. When I specifically made an arrangement for him to go and spoke to the neuromuscular chief and obtained an appointment, the patient rescheduled the appointment. This seems to be inconsistent with the severity of his illness in that he should have tried by all means to get there but stated that the transportation issues were too dire to make the trip to Ann Arbor, MI. Second, the patient was seen once in the neuromuscular disorders clinic on February 2, 2015, and states that his appointments continually get postponed, and now he wants to go to Michigan State University. This is somewhat unusual in that he has not allowed the workup to be completed at the University of Michigan which arguably has the best neuromuscular section in Michigan. There was additional laboratory testing required as well as a lumbar puncture which was obtained locally. This data has been collected. Apparently, they had done another EMG at the University of Michigan. There was also some inconsistency in his

8

examination from myself as well as at the neuromuscular unit in that on manual muscle testing, he presented much weaker than demonstrated by his ability to stand.

*Id*.

In addition, the doctor observed that:

He is no longer able to walk with the 2 canes as he has demonstrated here earlier this year. He would position the 2 canes downward alongside his feet and shuffle forward in a quite peculiar manner. The distance he could travel is, again, inconsistent with the amount of power he would generate on manual testing.

*Id*.

The doctor's impression was that,

This patient presents with additional muscle tone and brisk reflexes and fatigable weakness especially on the lower extremities but now also involving the upper extremities. This has been slowly progressive since year 2011. . . .

At this point, we have more questions than answers. I encouraged the patient to return to the University of Michigan to complete his workup, but instead he wants to start another workup al Michigan State University. I am uncertain as to why he wants to do this. The differential diagnosis favors a central nervous system or upper motor neuron dysfunction which includes primary lateral sclerosis of the spinal cord.

PageID.782.

The record reflects that Dr. Janusz completed the medical assessment on August 2, 2015, some weeks after he wrote the letter expressing his concerns. In both the assessment and the letter, the doctor noted that there was no medical support for the restriction that plaintiff is unable to carry any weight; rather, the doctor noted that this restriction was entirely subjective. PageID.778. In addition, the doctor noted that plaintiff's impairments were not reasonably consistent with the symptoms and functional limitations set forth in the assessment. Nevertheless, Dr. Janusz concluded that plaintiff was "barely ambulatory" and that he could no longer walk with two canes. PageID.781.

9

In evaluating Dr. Janusz' opinion, the ALJ stated that "[t]he assessments and observations of Dr. Janusz as a treating specialist, however, are given more weight." PageID.41. It appears to the Court that one of those assessments and observations would be the fact that plaintiff was "barely ambulatory." PageID.781. Whether plaintiff used one cane, two canes, or a wheelchair, the record reflects that he had problems with ambulation. However, as plaintiff points out, "[t]he ALJ specifically makes no finding in her decision for a restriction to work that allows a cane or wheelchair." Plaintiff's Brief (ECF No. 16, PageID.817). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely helpful for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985) (internal quotation marks omitted). Here, the Court cannot trace the ALJ's reasoning with respect to Dr. Janusz' opinion and plaintiff's problems with ambulation. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Janusz' opinion and clarify whether plaintiff can ambulate effectively, if he needs an assistive device, and if so, what type of device.

**D. The ALJ erred in not considering the effect of plaintiff's impairment on his ability to work.**

Plaintiff contends that the ALJ's hypothetical question to the vocational expert was flawed "because the hypothetical question assumed that plaintiff could work eight hours a day, five days a week and that there is nothing in the hypothetical question to suggest impairments for severe fatigue and weakness." Plaintiff's Brief at PageID.819. Plaintiff also contends that "the

hypothetical question posted to the vocational expert (VE) failed to address his use of a wheelchair and the fact that he is always weak and that he has continual problems with profound fatigue. *Id*. at PageID.818.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. Although plaintiff fails to identify which hypothetical question he contests, the Court assumes it is the question based upon plaintiff's RFC, PageID.116, which resulted in the jobs identified in the ALJ's decision. PageID.43, 112-113. Here, the ALJ did not commit error at step five. His hypothetical question accurately portrayed plaintiff's limitations by referring to the plaintiff's RFC determination made at step four.[1] Accordingly, plaintiff's claim of error will be denied.[2]

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Dr. Janusz' opinion and clarify whether plaintiff can ambulate effectively,

---

[1] Plaintiff contends that the ALJ did not comply with Social Security Ruling (SSR) 98-6p, which addresses the assessment of the RFC at step four. This argument is not applicable to plaintiff's claim that the ALJ erred at step five. "To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner." *Her v. Commissioner of Social Security*, 203 F.3d 388, 392 (6th Cir. 1999).

[2] The Court notes the ALJ may need to adjust plaintiff's RFC after re-evaluating Dr. Janusz' opinion and clarifying plaintiff's ability to ambulate.

if he needs an assistive device, and if so, what type of device. A judgment consistent with this opinion will be issued forthwith.

Dated: March 29, 2018				/s/ Ray Kent
						United States Magistrate Judge